The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re MCG Health Data Security Issue Litigation | No. 2:22-CV-00849-RSM-DWC |
| | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL** |
| | Noting Date: March 1, 2024 |

Plaintiffs Diana Saiki, Kenneth Hensley, as legal guardian of R.H., Linda Crawford, Julie Mack, Linda Booth, Candace Daugherty, Leo Thorbecke, Cynthia Strecker, Michael Price, Blanca Garcia, Joanne Mullins, Marjorita Dean, Kelly Batt, Jay Taylor, Shelley Taylor, and Gaye Ictech ("Plaintiffs" or "Representative Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant MCG Health, LLC ("MCG" or "Defendant") does not oppose certification of the Settlement Class[1] solely for purposes of effectuating the Settlement submitted for preliminary approval with this motion.

The Settlement follows extensive arms' length negotiations supervised by a respected, experienced mediator, whose proposal for resolution the Parties ultimately accepted. Under the Settlement, MCG will pay $8,800,000 into a common fund for the benefit of Plaintiffs and Settlement Class Members. The Settlement Class Members will receive individual notice of the

---

[1] Capitalized terms herein have the same meaning as those set forth in the Parties' Settlement Agreement and Release ("Settlement Agreement"), attached hereto as Exhibit 1 to the Declaration of Jason T. Dennett.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Settlement by direct U.S. mail. Every Settlement Class Member can make a claim for reimbursement of expenses incurred as a result of the Data Security Incident, up to $1,500 for ordinary losses and $10,000 for extraordinary losses or, alternatively, for a *pro rata* cash payment. Every Settlement Class Member is also entitled to three years of free credit monitoring and identity theft protection services regardless of whether they elect to claim reimbursement of expenses or a *pro rata* cash payment. In addition, the Settlement obligates MCG to maintain or implement additional data security measures to protect Settlement Class Members' information in the future. Notice and Settlement Administration costs, and litigation expenses, attorneys' fees, and Class Representative service awards as awarded by the Court, will be paid out of the common fund.

Plaintiffs and Settlement Class Counsel strongly endorse the Settlement as an excellent result that is in the best interests of the Settlement Class, particularly given the substantial risks and delay associated with continued litigation, and thus respectfully submit that the Court should grant preliminary approval and direct that notice be sent to the Settlement Class.

## FACTUAL BACKGROUND

MCG is a company that provides patient-care guidelines and software solutions to health care providers and health plans across the country. In this role, MCG operates as a business associate as defined by the Health Insurance Portability and Accountability Act ("HIPAA") and is required to comply with certain HIPAA regulations. *See* 45 CFR 160.103. In the ordinary course of business, MCG received and stored certain personally identifiable information ("PII") and protected health information ("PHI") of the Plaintiffs and putative Settlement Class Members.

On or about March 25, 2022, MCG determined that an unauthorized party apparently had accessed MCG's systems (the "Data Security Incident") and previously obtained certain PII and PHI matching data on MCG's systems pertaining to approximately 1,100,000 persons (collectively, "Personal Information"). While the date the Data Security Incident occurred is unknown, there is evidence to suggest the data may have been acquired by an unauthorized party

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 2
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

in February 2020. The Personal Information acquired or accessed by the unauthorized party includes some or all of the following data elements: patient names, genders, telephone numbers, addresses, email addresses, dates of birth, Social Security numbers, and medical code information. MCG notified its customers (i.e., health care providers or health plans) that were affected by the incident and offered to send notice to their respective affected patients/members and regulators on its customers' behalf. MCG directly notified approximately 931,373 individuals that certain of their personal information may have been the subject of the Data Security Incident on behalf of its customers that instructed it to do so and where MCG believed the impacted health care provider or health plan customer to which the information matched is no longer in business, or the information was not matched to a specific health care provider or health plan customer. On June 10, 2022, MCG issued a press release regarding the Data Security Incident.

Beginning on June 16, 2022, Plaintiffs, individually and on behalf of a proposed class of similarly situated individuals filed class action lawsuits against MCG asserting claims based on its alleged failure to adequately protect the Personal Information at issue. Plaintiffs alleged that they and the proposed class members suffered injury as a result of MCG's conduct, including: (1) the lost or diminished value of their Personal Information; (2) out-of-pocket expenses associated with the prevention, detection, and recovery of identity theft, tax fraud, and/or unauthorized use of their Personal Information; (3) lost opportunity costs associated with attempting to mitigate the consequences of the Data Security Incident, such as lost time; (4) deprivation of rights; and (5) the continued and increased risk to their Personal Information.

MCG denies the allegations and contentions against it in this litigation and denies all wrongdoing or liability associated with the Data Security Incident. Nevertheless, MCG agrees that continuing to litigate would be time consuming, burdensome and expensive and that it is therefore desirable to fully and finally settle this litigation in the manner and upon the terms set forth in the Settlement Agreement.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 3
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## PROCEDURAL BACKGROUND

On August 17, 2022, the separate cases arising out of the Data Security Incident were consolidated into the first filed action before this Court. (Dkts. 31, 37). Following consolidation, on September 16, 2022, Plaintiffs filed their Consolidated Class Action Complaint. (Dkt. 32). On October 31, 2022, MCG moved to dismiss the complaint in its entirety. (Dkt. 35). The issues raised in Defendant's motion were fully briefed and Chief Magistrate Judge David W. Christel recommended granting in part and denying in part the motion to dismiss and giving Plaintiffs leave to replead certain causes of action. (Dkt. 59). This Court adopted Magistrate Judge Christel's Report and Recommendation in its entirety (Dkt. 64), and Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FAC") on July 14, 2023. (Dkt. 67).

The Court appointed Jason T. Dennett of Tousley Brain Stephens PLLC, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, and Adam Polk of Girard Sharp LLP as Interim Co-Lead Class Counsel. (Dkt. 73). On July 26, 2023, after Magistrate Judge Christel issued his Report and Recommendation and after Plaintiffs filed the FAC, Plaintiffs and MCG engaged in an all-day, arms-length virtual mediation before a well-known and respected mediator, Jill R. Sperber of Judicate West, seeking a timely resolution of the Litigation. Declaration of Jason T. Dennett ("Dennett Decl."), ¶¶ 16, 18. As part of the mediation, the parties exchanged mediation briefs and MCG provided informal discovery, including information regarding its insurance policies and the remaining insurance funds available to cover Settlement Class Members' claims. Dennet Decl. ¶ 17. While the parties made headway in the initial mediation session, they did not come to an agreement. *Id.*, ¶ 18. Nevertheless, the parties continued to negotiate with the assistance of Ms. Sperber for the next four and a half months. *Id.*, ¶19. In the course of these negotiations, on September 14, 2023, MCG moved to dismiss Plaintiffs' amended complaint in its entirety (Dkt. 74). The motion has been fully briefed and has not been ruled upon. Ultimately, on December 8, 2023, the parties accepted Ms. Sperber's mediator's recommendation proposing a common fund settlement of $8.8 million. Dennett Decl.

¶ 20.   The parties promptly notified the Court of the settlement and advised that a ruling on MCG's motion to dismiss was no longer necessary. *See* December 14, 2023 Notice Docket Entry.

Thereafter, the parties continued negotiations to formalize the terms of the settlement as set forth in the Settlement Agreement. The parties executed the Settlement Agreement on or about March 1, 2024. A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Jason T. Dennett.

## SETTLEMENT TERMS

### I.   Proposed Settlement Class

The Settlement will provide substantial relief for the Proposed Settlement Class, which is defined as "All United States residents whose personally identifiable information (PII) and/or protected health information (PHI) was accessed or acquired during the MCG data security incident that MCG discovered on or about March 25, 2022." Settlement Agreement ("S.A.") ¶ 3.1. The Settlement Class contains approximately 1,100,000 persons. S.A. ¶ 1.2.

### II.   Settlement Benefits – Monetary Relief

The Settlement negotiated on behalf of the Class provides a $8,800,000 Settlement Fund, from which class members may make a claim for: (1) reimbursement of documented ordinary losses fairly traceable to the Data Security Incident, up to $1,500 per individual ("Ordinary Losses"), (2) reimbursement of documented extraordinary losses resulting from the Data Security Incident, up to $10,000 per person ("Extraordinary Losses"), or (3) as an alternative to filing a claim for ordinary or extraordinary losses, Settlement Class Members may submit a claim to receive an alternative cash payment, which will be a pro rata share of the net Settlement Fund ("Alternative Cash Payment"). S.A. ¶ 4.2. Settlement Class Members may also sign up for three years of free three-bureau credit monitoring ("Credit Monitoring"), regardless of whether they opt to make a claim for documented losses or for the alternative cash payment. S.A. ¶ 4.2.3.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 5
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### A.  Documented Ordinary Losses

The first category of payments is designed to reimburse Settlement Class Members for ordinary out-of-pocket expenses related to the Data Security Incident. S.A. ¶ 4.2.1. Settlement Class Members may request compensation for Ordinary Losses that are fairly traceable to the Data Security Incident with adequate documentation. *Id*. Ordinary expense reimbursements can be claimed at up to $1,500 per Class Member. *Id*. Such Ordinary Losses may include, by way of example, (i) unreimbursed losses relating to fraud or identity theft; (ii) out-of-pocket credit monitoring costs that were incurred on or after the Data Security Incident through the date of claim submission; and (iii) unreimbursed bank fees, long distance phone charges, postage, or gasoline for local travel. *Id*.

### B.  Documented Extraordinary Losses

The second category of payments provides for reimbursement of actual, documented extraordinary losses, up to $10,000 per Class Member, that were more likely than not caused by the Data Security Incident and which would not be covered by an Ordinary Loss payment. S.A. ¶ 4.2.2. Examples of losses that would be reimbursable as an Extraordinary Loss include the unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of Personal Information. *Id*. Documented Extraordinary Losses must: (i) be an actual, documented, and unreimbursed monetary loss, (ii) more likely than not caused by the Data Security Incident, (iii) with the loss having occurred between February 25, 2020 and the Claims Deadline, (iv) and not already covered by one or more of the ordinary reimbursement categories; and (v) the claimant must have made reasonable efforts to avoid the loss or seek reimbursement for the loss, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance.

### C.  Alternative Cash Payment

As an alternative to filing a claim for reimbursement of Ordinary Losses and Extraordinary Losses, Settlement Class Members may submit a claim to receive a *pro rata*

payment from the net Settlement Fund after payment of costs of the settlement, including the costs of carrying out the Notice Program and Claims Administration, any Attorneys' Fees and Expense Award, any Service Award to Representative Plaintiffs, and payments for claims for Ordinary Losses and Extraordinary Losses. S.A. ¶ 4.2.4

**D.  Credit Monitoring**

In addition, all Settlement Class Members may request three years of free three-bureau credit monitoring. S.A. ¶ 4.2.3. Class Members shall be entitled to this benefit regardless of whether they make a claim for Ordinary Losses, Extraordinary Losses, or the Alternative Cash Payment.

**III.     Settlement Benefits – Injunctive Relief**

In addition to the monetary benefits for Settlement Class Members, the Settlement Agreement requires MCG to have maintained or implemented additional data security measures to protect Settlement Class Members' Personal Information into the future. Although sharing the details of these measures publicly could expose MCG to further risk, at a high level, these measures include, among other things: obtaining HITRUST CSF Certification, undertaking administrative, physical, and technical security measures to appropriately protect PHI, monitoring its electronic information systems containing PHI, engaging in penetration testing to identify and mitigate security vulnerabilities, providing training to employees with access to PHI, and monitoring the dark web for indications of fraudulent activity with respect to PHI hosted within its electronic information systems. The value of these measures to date based on the cost to implement and maintain them is approximately $1,565,000 to $3,580,000 during the two years since the Data Security Incident. Declaration of Richard Peters ("Peters Decl.") at ¶¶ 54-74.

**IV.    Total Value of the Settlement**

Given the amount of the Settlement Fund, the provision of three years of credit monitoring and identity theft protection services to Settlement Class Members, and the enhancements to Defendant's data security practices, Class Counsel's conservative estimation of

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 7
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the total value of the settlement benefits offered to the Proposed Class is likely in excess of $22 million. Peter Decl. ¶¶ 54–74; Declaration of Scott M. Fenwick ("Kroll Decl.") ¶¶ 15–16. The actual value of the Settlement Benefits provided to the Settlement Class is $8,800,000 plus the estimated costs of Defendant's enhanced business practices and an option to obtain three years of credit monitoring without paying the retail value of similar credit monitoring services. Kroll Decl. ¶¶ 15–16. The retail value of similar credit monitoring is at least $9.99 per month for a total value to each class member of $359.64 over 36 months. *Id.* at ¶ 16. Based on claims rates for credit monitoring in similar cases, Class Counsel anticipates that approximately 3-5% of the class will seek credit monitoring, resulting in a net class benefit of approximately $11,868,120 to $19,780,200.  Kroll Decl. ¶ 19.

## V.    Class Notice and Settlement Administration

Interim Class Counsel contacted leading class action claims administrators to seek bids for providing administrative services for this Settlement. DECL. After thorough vetting of the proposals and comparing the cost efficiencies against the services provided, the parties selected, and request that the Court approve, Kroll Settlement Administration LLC ("Kroll") as Claims Administrator. S.A. ¶¶ 2.7, 5.1(i); Dennett Decl. ¶ 27. The Claims Administrator will be responsible for providing notice to Settlement Class Members, maintaining a Settlement Website with all pertinent documents and deadlines, communicating with Settlement Class Members, reviewing and making determinations regarding claims, and disbursing settlement payments.

The Notice Program will be paid for from the Settlement Fund and has been designed to provide the best notice practicable, aiming to reach the greatest number of Settlement Class Members possible. S.A. ¶ 6.2; Kroll Decl. ¶ 11. Notice will be given to the Settlement Class via direct, individual notice, which will be given by mailing the Summary Notice (S.A., Exhibit C) via U.S. mail to the postal addresses provided to the Claims Administrator by MCG. S.A. ¶¶ 6.2, 6.3; Kroll Decl. ¶¶ 7–10. The Long Notice (S.A. Exhibit B) will be posted on the Settlement Website, which the Claims Administrator will establish within 30 days after entry of the

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 8
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Preliminary Approval Order (the "Notice Deadline"), along with other important documents such as the Settlement Agreement and the motions for final settlement approval and for attorneys' fees and expenses, and service awards once they are filed. S.A. ¶¶ 2.38, 6.3.2.

The notice documents, including the Summary Notice and Long Notices, are based on models approved by courts in this district in data breach settlements. They are clear, concise, and directly apprise Settlement Class Members of all the information they need to know regarding how to make a claim, opt out, or object to the Settlement. The timing of the Notice Program will give Class Members adequate time to determine if they would like to submit a claim, opt out of, or object to the Settlement. In addition to the Settlement Website, a toll-free number with interactive voice responses will be established to address Class Members' questions and assist them with their options and with making claims under the Settlement. Kroll Decl. ¶¶ 12–13.

## VI.   Attorneys' Fees and Expenses

If the Settlement is preliminarily approved, Class Counsel will apply for an award of reasonable attorneys' fees and costs no later than 14 days prior to the opt-out/objection deadline. Pursuant to the Settlement Agreement, Settlement Class Counsel will seek an award of Attorneys' Fees and reasonable costs and expenses incurred in the Litigation, of no more than two million nine hundred and thirty thousand dollars ($2,930,000). S.A. ¶ 11.1.

## VII.   Service Awards to Representative Plaintiffs

The Representative Plaintiffs in this case have played a crucial role in this matter, including by stepping up publicly to represent the other breach victims and providing Interim Class Counsel with important information about the impact of the Data Security Incident. All Plaintiffs have been personally involved in the case and support the Settlement. Dennett Decl. ¶ 35. Plaintiffs will separately petition the Court for service awards of $2,500 for each Representative Plaintiff in recognition of the time, effort, and expense they incurred pursuing claims for the benefit of the Settlement Class. S.A. ¶ 11.2. Service awards in this range are commonly awarded in class action cases. *See, e.g.*, *Pauley v. CF Entm't*, No. 2:13-CV-08011-

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 9
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  RGK-CW, 2020 WL 5809953, at *4 (C.D. Cal. July 23, 2020) (where the Court granted "class

2  representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount

3  to be "presumptively reasonable"); *In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612,

4  at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable

5  benchmark [for service awards].").

6  **VIII.    Release**

7      Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class Members

8  who do not submit a valid and timely Opt-Out Request will be deemed to have "fully, finally,

9  completely, and unconditionally released, discharged, and acquitted MCG and the Released

10  Parties from any and all of the Released Claims" S.A. ¶¶ 2.29, 10.1, 10.2. "Released Claims" are

11  defined as "all claims that in any way arise out of or relate to the Data Security Incident or could

12  have been brought in the Litigation" other than claims relating to the enforcement of the

13  Settlement Agreement and the claims of any Settlement Class Members who timely opted out of

14  the class. S.A. ¶ 2.29. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (holding that

15  a settlement "may preclude a party from bringing a related claim in the future even though the

16  claim was not presented and might not have been presentable in the class action . . . where the

17  released claim is based on the identical factual predicate as that underlying the claims in the

18  settled class action").

19                    **ARGUMENTS AND AUTHORITY**

20      Federal Rule of Civil Procedure 23(e) requires court review and approval of any proposed

21  class action settlement. Federal courts strongly favor and encourage settlements, particularly in

22  class actions where the inherent costs, delays, and risks of continued litigation might otherwise

23  overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of

24  Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors

25  settlements, particularly where complex class action litigation is concerned"); 5 Newberg on

26  Class Actions § 13:44 (recognizing judicial policies favoring settlement in class action cases and

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 10
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

noting presumption that a proposed settlement is "fair in the presence of certain factors."). Handling claims like those at issue here through individual litigation would unduly tax the court system, require large expenditures of resources, and would be impracticable given the relatively small value of the claims of the individual members of the proposed class. The Settlement before the Court provides the best vehicle for Settlement Class Members to obtain the relief to which they are entitled in a prompt and efficient manner.

Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement, (2) dissemination of court-approved notice to the class with the opportunity for putative class members to opt out or object to the settlement, and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. Manual for Complex Litigation (Fourth) (2004) § 21.63.

Plaintiffs seek certification of a Settlement Class consisting of: "All United States residents whose personally identifiable information (PII) and/or protected health information (PHI) was accessed or acquired during the MCG data security incident that MCG discovered on or about March 25, 2022." S.A. ¶ 3.1. The Settlement Class contains approximately 1,100,000 persons.

## I.     The Settlement Satisfies Rules 23

As part of its review of a proposed class settlement, the Court "should make a preliminary determination that the proposed class satisfies the criteria" of Rule 23. Manual for Complex Litigation (Fourth) § 21.632. The Court's evaluation of certification in the context of a settlement, however, does not consider trial manageability. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### A.     The Settlement Class Satisfies Rule 23(a)

Before assessing the parties' settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL - 11
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

for Complex Litigation (Fourth), § 21.632. These requirements are: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

### i. The proposed Settlement Class is sufficiently numerous.

While there is no fixed point at which the numerosity requirement is met, courts find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). Generally, courts will find numerosity satisfied where a class includes at least 40 members. *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). Numbering approximately 1,100,000 individuals, the proposed settlement class easily satisfies Rule 23's numerosity requirement. Joinder of so many individuals is clearly impracticable.

### ii. The proposed Settlement Class satisfies the commonality requirement.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016).

The common questions include, *inter alia*, whether MCG engaged in the conduct alleged; whether MCG failed to implement adequate data security measures; whether Class Members' Personal Information was compromised in the Data Security Incident; whether MCG owed a duty to Plaintiffs and Class members; whether MCG breached its duties; whether MCG's conduct was unfair; and whether MCG unreasonably delayed in notifying Plaintiffs and class members of the material facts of the Data Security Incident. *See Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166, at *3 (W.D. Wash. Dec. 19, 2023) (allegations regarding

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 12
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

defendant's "failure to safeguard their PII consistent with industry standards" satisfied commonality). Plaintiffs accordingly have met the commonality requirement of Rule 23(a).

### iii.     The Representative Plaintiffs' claims and defenses are typical of those of the Settlement Class.

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on MCG's alleged failure to protect the Personal Information of Plaintiffs and all class members, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Assocs.*, 707 F.3d 943, 1041–42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their Personal Information and that of the class was compromised, and therefore they were impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *Convergent Outsourcing*, 2023 WL 8778166, at *3 (finding allegations that personal information was compromised in data breach satisfied typicality requirement); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Thus, typicality is met.

### iv.     The Representative Plaintiffs will adequately protect the interests of the Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985 (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiffs have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Class who experienced the same alleged injuries and seek, like other Settlement Class Members, compensation for harm resulting from MCG's data security shortcomings. There is no conflict of interest.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 13
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    Further, Plaintiffs' counsel have decades of combined experience as zealous class action
2    litigators, including in the area of data breach litigation, and are well suited to continue
3    representing the Settlement Class. Dennet Decl. ¶¶ 4–8, Exs. 2–5.

4    Thus, Plaintiffs satisfy the adequacy requirement.

5    **B.     The Settlement Satisfies Rule 23(b)(3)**

6    "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class
7    certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or
8    (3)." *Hanlon*, 150 F.3d at 1022. Here, the Settlement Class is maintainable for purposes of
9    settlement under Rule 23(b)(3), which requires that a district court determine that "questions of
10   law or fact common to class members predominate over any questions affecting only individual
11   members, and that a class action is superior to other available methods for the fair and efficient
12   adjudication of the controversy."

13   The predominance requirement "tests whether proposed classes are sufficiently cohesive
14   to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). "If
15   common questions 'present a significant aspect of the case and they can be resolved for all
16   members of the class in a single adjudication,' then 'there is clear justification for handling the
17   dispute on a representative rather than on an individual basis,' and the predominance test is
18   satisfied." *See Hanlon*, 150 F.3d at 1022. To satisfy this requirement, "common issues need only
19   predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796,
20   801 (7th Cir. 2013) (quotations omitted).

21   In determining whether the "superiority" requirement is satisfied, a court may consider:
22   (1) the interest of members of the class in individually controlling the prosecution or defense of
23   separate actions; (2) the extent and nature of any litigation concerning the controversy already
24   commenced by or against members of the class; (3) the desirability or undesirability of
25   concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to
26   be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 14
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Plaintiffs' claims arise out of the same Data Security Incident and depend, first and
2    foremost, on whether MCG used reasonable data security measures to protect Settlement Class
3    Members' Personal Information. That question can be resolved, for purposes of settlement, using
4    the same evidence for all Settlement Class Members, and therefore is precisely the type of
5    predominant question that makes a class-wide settlement worthwhile. *See, e.g.*, *Tyson Foods,*
6    *Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) ("When 'one or more of the central issues in
7    the action are common to the class and can be said to predominate, the action may be considered
8    proper under Rule 23(b)(3) . . . .'") (citation omitted). Predominance for settlement purposes is
9    accordingly met, as "the class is a 'cohesive group of individuals [who] suffered the same harm
10   in the same way because of the [defendant's alleged] conduct.'" *In re Hyundai & Kia Fuel*
11   *Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019) (citation omitted).

12   Class certification here is also "superior to other available methods for . . . fairly and
13   efficiently adjudicating the controversy." Fed. R. Civ. P. 23(a)(4). Classwide resolution is the
14   only practical method of addressing the alleged violations at issue in this case. Adjudicating
15   individual actions here is impracticable: the amount in dispute for individual class members is
16   too small, the defendant's resources are substantial by comparison, the technical issues involved
17   are complex, and the required expert testimony and document review are costly. *See Just Film*,
18   847 F.3d at 1123; *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands,*
19   *Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small
20   individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land*
21   *Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis
22   would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of
23   class certification.").

24   No single member of the class has an interest in controlling the prosecution of this action
25   because Plaintiffs' claims and the claims of class members concern the same incident.
26   Alternatives to a class action are either no recourse for over a million individuals, or a multiplicity

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 15
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    of suits resulting in an inefficient and possibly disparate administration of justice. There are

2    thousands of class members with modest individual claims, most of whom likely lack the

3    resources necessary to pursue individual legal redress. *Convergent Outsourcing*, 2023 WL

4    8778166, at *4 (finding class action superior for adjudication of data breach litigation "given the

5    relatively small individual amounts likely at issue, the limited interest each class member likely

6    has in directing the litigation, and the desirability in having one court resolve this legal and factual

7    issue for all class members."); *see also Wolin*, 617 F.3d at 1175 (9th Cir. 2010); *Valentino v.*

8    *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding class action method to be

9    superior if "classwide litigation of common issues will reduce litigation costs and promote greater

10   efficiency"). A class action is therefore superior to other methods for the fair and efficient

11   adjudication of the claims of Plaintiffs and the Class.

12   **II.    The Settlement Should be Preliminarily Approved Pursuant to Rule 23(e)**

13       For the Court to preliminarily approve a class settlement and to direct that notice be sent

14   to class members, the parties must show that the Court "will likely be able to (i) approve the

15   proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

16   Fed. R. Civ. P. 23(e)(1)(B). *Tuttle v. Audiophile Music Direct Inc.*, No.C22-1081JLR, 2023 WL

17   3318699, at *3 (W.D. Wash. May 9, 2023). "The parties must provide the court with information

18   sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R.

19   Civ. P. 23(e)(1)(A). If the parties make a sufficient showing that the Court will likely be able to

20   "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he

21   court must direct notice in a reasonable manner to all class members who would be bound by the

22   proposal." Fed. R. Civ. P. 23(e).

23       As a general matter, preliminary approval is appropriate if the settlement falls within the

24   range of possible approval. *Hunichen v. Antonomi LLC*, No. C19-0615-RAJ-SKV, 2021 WL

25   5854964 at *4 (W.D. Wash. Nov. 12, 2021). "The purpose of the preliminary approval process

26   is to determine whether there is any reason not to notify the class members of the proposed

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 16
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has also identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. In applying these factors, this Court should be guided by the general principle that settlements of class actions are favored by federal courts. *See Class Plaintiffs*, 955 F.2d at 1276 (noting "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### A.      The Rule 23(e) Factors are Satisfied

#### i.      The Representative Plaintiffs and Interim Class Counsel have adequately represented the Settlement Class.

Class Counsel are highly experienced in litigating complex class actions, and are considered leaders in the field of data breach litigation. They have been appointed as lead or co-lead counsel on numerous data breach cases and were appointed by this Court to serve as interim class counsel. Dennett Decl. ¶¶ 4–8. Their professional experience, including in prosecuting similar class actions, enabled Counsel to provide exemplary representation for the Class in prosecuting claims and negotiating on the Class's behalf.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 17
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Upon learning of the data breach, Class Counsel engaged in a rigorous investigation before filing suit. Dennett Decl., ¶¶ 10–11. Class Counsel recognized the opportunity and potential benefit to the Class from an early negotiated resolution. Counsel worked with an experienced mediator and sought targeted informal discovery to facilitate and inform these negotiations. *Id.* at ¶ 17.

Class Counsel's substantial experience with data breach litigation allowed them to negotiate for and reach a proposed settlement that they believe is in the best interest of the class. The proposed Settlement was negotiated between experienced attorneys for all Parties who are familiar with class action litigation in general and with the legal and factual issues of this case in particular.  As detailed above, the Settlement was the result of months of extensive and arm's-length settlement negotiations with an experienced mediator, including the eventual acceptance of the mediator's proposal. Dennett Decl., ¶¶ 15–22.

Likewise, Representative Plaintiffs have demonstrated their adequacy to represent the class. Plaintiffs provided detailed information regarding the circumstances of the fraud they experienced after the Data Security Incident and greatly assisted Class Counsel with the investigation of the claims. Each of them has remained in contact with Counsel throughout the litigation, and each reviewed and approved the terms of the Settlement as being in the best interest of the Class. Dennett Decl., ¶¶ 25, 35–36.

**ii.    The settlement was negotiated at arm's length.**

The terms of the settlement were negotiated at arm's length and included a full day mediation followed by four and a half months of additional negotiations under the direction of the mediator Jill Sperber, who has extensive experience in handling class actions, including data breach class actions. The negotiations were vigorously contested, and the Parties reached their Settlement only on the basis of the mediator's proposal for resolution. *See G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 18
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props*., No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution."). Moreover, the parties did not discuss attorneys' fees until after the other terms of the settlement were negotiated.

### iii.     The relief to the class is adequate.

The relief offered to Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Incident and is more than adequate under the factors outlined in Rule 23(e)(2)(C). Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Experienced counsel's judgment in this regard merits some deference. *See, e.g*., *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

In evaluating the adequacy of a proposed settlement, the Court must take into account (i) the costs, risks and delay of trial and appeal;; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

### a.     The costs, risks, and delay of trial and appeal

Plaintiffs believe they have built a strong case for liability. Dennett Decl. ¶ 23. Plaintiffs contend that MCG is liable for its negligent, unfair, and unlawful conduct under tort and statutory claims. Dkt. 67; *see also* Dkts. 59, 64 (upholding claims under the Washington, Kansas, and Louisiana consumer statutes); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650 (N.D. Cal. 2020) ("[T]ime and money [plaintiff] spent on credit monitoring in response to the Data Breach is

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 19
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1  cognizable harm to support her negligence claim"); *In re Accellion, Inc. Data Breach Litig.*, No.

2  5:21-CV-01155-EJD, 2024 WL 333893, at *3 (N.D. Cal. Jan. 29, 2024) (holding company

3  entrusted with data had special relationship and owed duty to individuals whose information was

4  compromised).

5        While Plaintiffs believe they have strong claims, they also recognize success is not

6  guaranteed. Class Counsel acknowledge the substantial risks and delays that would arise in

7  continued litigation. This case involves a proposed class of approximately 1,100,000 individuals;

8  the need to establish cognizable harm and causation; a complicated and technical factual overlay;

9  and a motivated, well-represented Defendant that already has provided some relief to potentially

10  affected individuals in the form of credit monitoring services. "Regardless of the risk, litigation

11  is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG*

12  *Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal.

13  Feb. 29, 2016).

14        The chances of prevailing on the merits are uncertain—especially where significant

15  unsettled questions of law and fact exist, which is common in data breach litigation. "Data breach

16  litigation is evolving; there is no guarantee of the ultimate result." *Fox v. Iowa Health Sys*., No.

17  3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (citing *Gordon v.*

18  *Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo.

19  Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.")).

20  Although nearly all class actions involve a high level of risk, expense, and complexity, the size

21  and magnitude of the Data Security Incident in this case would have made continued litigation

22  lengthy, complex, and difficult, and the rapid evolution of case law in this area of the law makes

23  outcomes uncertain while increasing litigation expense. Given the obstacles and inherent risks

24  Plaintiffs face with respect to their claims, including risks relating to class certification, summary

25  judgment, and trial, the substantial benefits the Settlement provides favor preliminary approval

26  of the Settlement. Dennett Decl. ¶¶ 23–24.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 20
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Even large cases implicating data more sensitive than that at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Liti*g., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *rev'd*, 928 F.3d 42 (D.C. Cir. 2019). Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and uncertain of all class actions, making settlement a prudent path when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. As in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which could result in zero recovery to the class and would further delay redress for the breach victims.

Finally, because Plaintiffs' case remains at the pleadings stage, the parties have not briefed, and the Court has not yet certified, any class treatment of the claims. If they were to proceed to litigate through trial, Plaintiffs would face risks in obtaining and maintaining certification of the class, which Defendant would likely oppose in the absence of a settlement. Thus, Plaintiffs "necessarily risk losing class action status" at any time following certification. *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014); *see Mazzei v. Money Store*, 829 F.3d 260, 265–67 (2d Cir. 2016) (class decertified after trial).

While Plaintiffs believe their claims are well suited for class certification, numerous obstacles to certification exist. The first data breach case to obtain certification was *Smith v. Triad*

*of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017), which granted certification on a bifurcated basis; and a more recent certified contested class, *In re Marriott International Customer Data Securities Breach Litigation*, 341 F.R.D. 128 (D.Md. 2022), was recently decertified on appeal. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023).[2] The relative absence of trial class certification precedent in the relatively novel data breach setting adds to the risks posed by continued litigation.

> b.  The effectiveness of distributing relief to the class

Subject to Court approval, the Parties have agreed to retain Kroll, an experienced and competent claims administrator familiar with handling data breach settlements. The 1.1 million class members are specifically identifiable from MCG's records, and notice of the settlement and its terms will be individually mailed to each of them. The Claims Administrator is tasked with reviewing and determining the validity of submitted claims and will provide class members with an opportunity to correct any deficiency submissions. Class members will receive checks in the mail within the later of sixty (60) days after the Effective Date or thirty (30) days after all disputed claims are resolved.  This process ensures that all Class Members have an opportunity to seek relief, will have their claims assessed fairly by a competent administrator, and will receive benefits in a timely manner. This factor supports a finding that the Proposed Settlement is adequate.

> c.  The terms of the proposed attorneys' fees, including timing of payment.

Pursuant to the Settlement Agreement, Class Counsel will seek up to $2,930,000 in fees and expenses. Any fee award is of course subject to court approval. This fee award was not discussed until after the substantive material terms of the settlement were agreed upon by the

---

[2] To complete the story, the classes were re-certified by the district court on remand.  *See In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023).

1   Parties. Dennett Decl. ¶ 33. The Settlement provides for payment of attorneys' fees and

2   expenses seven days after the effective date of the settlement. S.A. ¶ 11.3.

3                   **d.**  <u>Any agreement required to be identified under Rule 23(e)(3)</u>

4           There are no additional agreements made in connection with the settlement proposal.

5           **iv.**    **The settlement treats class members equitably.**

6           Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all

7   class members equitably relative to each other. The Advisory Committee's Note to Rule

8   23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class

9   members takes appropriate account of differences among their claims, and whether the scope of

10  the release may affect class members in different ways that bear on the apportionment of relief."

11  Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In determining whether this factor weighs

12  in favor of approval, a Court must determine whether the Settlement "improperly grant[s]

13  preferential treatment to class representatives or segments of the class." *Paredes Garcia v.*

14  *Harborstone Credit Union*, No. 3:21-CV-05148-LK, 2023 WL 4315117, *5 (W.D. Wash. July

15  3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

16          Here, the Settlement does not discriminate between any segments of the class, as all

17  Settlement Class Members are entitled to the same relief. Each and every Settlement Class

18  Member has the opportunity to make a claim for up to $1,500 in reimbursements for expenses

19  and time spent, up to $10,000 in reimbursements for extraordinary expenses, or the opportunity

20  to claim an alternative cash payment. All Settlement Class Member may also obtain three years

21  of free three-bureau credit monitoring. While Plaintiffs will apply for service awards, an award

22  of $2,500 per class representative is in line with awards granted in similar cases and is not out of

23  proportion to the recoveries for other class members. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, No. 14-cv-

24  00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is

25  presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779

26  F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 23
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**B.     The Ninth Circuit's Factors are Satisfied**

Most of the traditional factors recognized by the Ninth Circuit for determining settlement approval are encompassed within Rule 23(e)'s considerations, including (i) strength of the Plaintiffs' case, (ii) the risks, expenses, complexity, and duration of continuing litigation, (iii) the risks of maintaining a class through trial and appeal, and (iv) absence of collusion. To the extent not already addressed above, this proposed settlement also meets the Ninth Circuit's factors. *See Hanlon*, 150 F.3d at 1026.

**i.     The Amount Offered in Settlement.**

Given the risks and uncertainties presented by continued litigation, the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members. Every Settlement Class Member may request three years of free three-bureau Credit Monitoring, a valuable benefit. Moreover, each Settlement Class Member is eligible to make a claim for $1,500 in reimbursements for Ordinary Losses, up to $10,000 in reimbursements for Extraordinary Losses related to the Data Security Incident, or an alternative cash payment, which will consist of a *pro rata* share of the net Settlement Fund after payment of costs of the settlement including the costs of carrying out the Notice Program and Claims Administration, any Attorneys' Fees and Expenses Award, any Service Award to Representative Plaintiff, and payments for claims for Ordinary Losses, Extraordinary Losses, and Credit Monitoring.

This Settlement is a strong result for the Class and is in line with other settlements in cases involving data breaches of similar scope. The $8,800,000 fund for a Settlement Class of approximately 1.1 million people apportions out to approximately $8 per class member (assuming every class member claimed). This is significantly better than many approved data breach settlements with classes of more than 1 million persons—many of which provided per-

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL - 24
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

class member recoveries of less than $1.[3] Because the Settlement amount here compares favorably to that achieved in other settlements approved in similar cases, this factor weighs in favor of the Settlement's adequacy. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). Accordingly, this factor favors approval.

### ii.   The Extent of Discovery Completed and Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs gathered information that was available regarding MCG and the Data Security Incident—including publicly-available documents concerning announcements of the Data Security Incident and notice of the Data Security Incident to Plaintiffs and the Settlement Class. Dennett Decl. ¶¶ 11. Further, the parties informally exchanged non-public information concerning the Data Security Incident and the size of the Class during the mediation and settlement negotiation process. *Id.* ¶ 17. This information gathering process adequately substituted for the lack of formal discovery, and Class Counsel's knowledge from decades of experience in similar types of privacy and data protection matters also enabled Class Counsel to represent the interests of class members without expending hundreds of hours and excessive financial resources to come up to speed. *See id.* ¶¶ 23–24. "[T]he efficiency with which the

---

[3] *See, e.g.*, *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person); *In re: Capital One Consumer Data Breach Litig.*, MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (E.D. Va. Aug. 29, 2022) (Memo in Support of Final Approval), page 1 ($190 million common fund settlement for a class of approximately 98 million, or $1.93 per person); *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC 589243 (Cal. Super. Ct. June 28, 2019) ($2 million settlement in medical information data breach for approximately 4,500,000 class members; 44 cents per class member); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 class members; $1.45 per class member); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) & ECF No. 181-2 ¶¶ 22, 38 ($13 million settlement for approximately 40 million class members; 32.5 cents per class member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million class members; 10 cents per class member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per class member).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017).

In short, Plaintiffs entered the Settlement after being well informed about the strengths and weaknesses of this case and had sufficient information to conclude that the Settlement is in the best interest of the class.

### iii.     The Experience and Views of Class Counsel.

As discussed, Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Dennett Decl. ¶¶ 4–8. Having worked on behalf of the proposed class since the Data Security Incident was first announced, evaluated the legal and factual issues, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel endorse the Settlement without reservation. *Id.* ¶¶ 10–14, 23–24. The Court may accord a great deal of weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, No. 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017). Thus, this factor supports approval.

### iv.     Governmental Participants.

There are no governmental participants in this matter. This factor is neutral.

### v.     The Reaction of Settlement Class Members to the Proposed Settlement.

The Representative Plaintiffs all support the Settlement. Plaintiffs will update the Court as to the response of the Class to the Settlement after notice has not been given. Dennett. Decl. ¶¶ 25, 36.

## III.     The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 26
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019).

Here, and after a competitive bid process, the parties have agreed to a robust Notice Program to be administered by a well-respected third-party Class Administrator—Kroll—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member. Prior to sending the Summary Notice, Kroll will check all mailing addresses against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information is up-to-date and accurately formatted for mailing.[4]

The costs of administering the Settlement will be paid from the Settlement Fund. S.A. ¶ 6.2. The Notice Program and Claim Forms negotiated by the Parties are clear, concise, and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt out of the Settlement. S.A. Exs. A, B, and C.

---

[4] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery-point-coded addresses, for matches made to the NCOA file for individual, family, and business moves.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 27
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

The Administrator will also establish a dedicated Settlement Website that will allow Settlement Class Members to file an online Claim Form. In addition, the Settlement Website will include relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt out (request exclusion) from or object to the Settlement, contact information for the Claims Administrator, and how to obtain other case-related information. Kroll. Decl. ¶ 12. The administrator will also establish a toll-free help line where callers will be able to hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Long Notice be mailed to them. *Id.* ¶ 13.

The Notice Program is reasonably calculated under all the circumstances to apprise Settlement Class Members of the pendency of the action and afford them an opportunity to present their objections. The Claims Administrator estimates that direct notice will reach at least 90% of the Settlement Class. Kroll Dec. ¶ 11. Because this notice plan upholds Settlement Class Members' due process rights, it should be approved. *See Hartranft v. TVI, Inc.*, No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019); *Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights").

## IV.   The Court Should Appoint Kroll as Claims Administrator

In connection with the implementation of the Notice Program and administration of the settlement benefits, the Parties respectfully ask that the Court appoint Kroll to serve as the Claims Administrator. Kroll is a well-respected third-party administrator with a trusted and proven track record of supporting class action administration. Kroll Decl. ¶ 2

## V.   The Court Should Appoint Interim Class Counsel as Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 28
No. 2:22-CV-00849-RSM-DWC

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  determination, courts generally consider the following attributes: the proposed class counsel's

2  (1) work in identifying or investigating potential claims, (2) experience in handling class actions

3  or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the

4  applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P.

5  23(g)(1)(A)(i–iv).

6      Here, proposed Settlement Class Counsel have extensive experience prosecuting class

7  actions and other complex cases, and specifically data breach cases. *See* Dennett Decl. ¶¶ 4–8,

8  23–24. The Court found proposed Settlement Class Counsel qualified in appointing them as

9  Interim Class Counsel, and the Settlement they negotiated on behalf of the class confirms their

10  adequacy. Accordingly, the Court should appoint Jason T. Dennett of Tousley Brain Stephens

11  PLLC, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, and Adam Polk

12  of Girard Sharp LLP as Settlement Class Counsel.

13                                 **CONCLUSION**

14      Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide

15  Settlement Class Members with significant monetary and equitable relief. For all the above

16  reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Motion preliminarily approving

17  the Settlement and direct that Notice be sent to the Settlement Class.

18      DATED this 1st day of March, 2024.

19                           TOUSLEY BRAIN STEPHENS PLLC

20

21                           By: *s/ Jason T. Dennett*_____
                               Jason T. Dennett, WSBA #30686
22                             *s/ Rebecca L. Solomon*_____
                               Rebecca L. Solomon, WSBA #51520
23                             1200 Fifth Avenue, Suite 1700
                               Seattle, WA 98101-3147
24                             Tel: (206) 682-5600/Fax: (206) 682-2992
                               *jdennett@tousley.com*
25                             *rsolomon@tousley.com*

26

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL - 29
No. 2:22-CV-00849-RSM-DWC

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Gary M. Klinger (Admitted *Pro Hac Vice*)
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN,
PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

Adam E. Polk (CA State Bar No. 273000) (Admitted
*Pro Hac Vice*)
Simon Grille (CA State Bar No. 294914) (Admitted
*Pro Hac Vice*)
Jessica Cook (CA State Bar No. 339009) (Admitted
*Pro Hac Vice*)
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
jcook@girardsharp.com

*Interim Co-Lead Counsel for Plaintiff and Putative
Class Members*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992